**SUSSEX DRUG PRODUCTS, a corporation of the State of New Jersey, Appellee,**

v.

**KANASCO, LTD., a corporation of the State of Maryland, a/t/a/d/b/a John D. Copanos & Sons, Inc.; John D. Copanos & Sons, Inc., a corporation of the State of Florida; and John D. Copanos, an individual.**

**Appeal of KANASCO, LTD. and John D. Copanos & Sons, Inc.**

No. 90–5269.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1990.

Decided Dec. 19, 1990.

Clarkson S. Fisher, Jr. (argued), Ober, Kaler, Grimes & Shriver, Edison, N.J., for appellants Kanasco, Ltd., and John D. Copanos & Sons, Inc.

Robert J. Candido (argued), Thomas L. Weisenbeck, Jan C. Walker, Hannoch & Weisman, Roseland, N.J., for appellee Sussex Drug Products Co.

Before SLOVITER, BECKER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this suit growing out of the sale of adulterated pharmaceuticals, the district court entered partial summary judgment awarding compensatory damages for breach of contract and warranties and certified the judgment under Federal Rule of Civil Procedure 54(b). Remaining for disposition is a count for punitive damages based on the same sales. Because the partial summary judgment is not final, we will dismiss the appeal.

For a number of years, plaintiff Sussex Drug Products, purchased drugs for veterinary use manufactured by defendant Kanasco Ltd. and distributed by defendant John D. Copanos & Sons, Inc. In November 1986 the United States began forfeiture proceedings, alleging adulteration of quantities of those drugs in the plaintiff's possession. These proceedings were transferred to the Western District of Missouri and consolidated with similar actions filed in other districts.

In December 1986 plaintiff filed a civil action for damages in the District Court of New Jersey. After the District Court of Missouri granted the United States' motion for partial summary judgment on the issue of adulteration in the forfeiture cases, plaintiff here moved for summary judgment on liability in the New Jersey District Court citing issue preclusion. The District Court granted summary judgment on counts 1–4 seeking damages for breach of contract as well as various implied and expressed warranties. Those counts named both corporate defendants, but not the individual defendant.

Not included in the judgment was count five, alleging fraud on the part of the corporate defendants and the individual defendant John D. Copanos, president of the two companies. In addition to compensatory damages, this latter count asked for punitive damages.

Following a bench trial on damages, the District Court of New Jersey found the following to be due:

| | |
|---|---|
| Purchase price of adulterated merchandise | $ 721,311.10 |
| Storage fees for adulterated merchandise | 26,130.00 |
| Lost profits | 252,692.42 |
| Prejudgment interest | 168,136.61 |
| **TOTAL** | **$1,168,270.13** |

Judgment in the amount of $1,168,270.13 was entered against the defendants Kanasco, Ltd. and John D. Copanos & Sons, Inc.

Plaintiff asked the court to certify the partial judgment as final under Federal Rule of Civil Procedure 54(b), so as to permit enforcement. The district court granted the motion, concluding that the claim for fraud was discrete from those asserting breach of contract and warranty and that plaintiff had a legitimate concern about the collectability of the judgment against the corporate defendants. After appealing to this court, defendants moved for summary reversal contending that the Rule 54(b) certification was improper. That matter was consolidated with the proceedings on the merits.

On appeal, defendants renew their jurisdictional arguments and assert on the merits that the district court erred in using the interlocutory partial summary judgment of the Missouri court as the basis for issue preclusion. Although the use of an interlocutory order for issue preclusion is a matter of grave concern, we need not address that point here because the circumstances preclude the use of Rule 54(b) to confer jurisdiction.

Disfavoring piecemeal appeals is a longstanding policy of the federal courts. Rule 54(b), however, was designed to remedy the harsh effects that sometimes result from a delayed appeal in litigation presenting multiple claims or multiple parties.

The multiple party aspect of Rule 54(b) applies only if the district court's judgment disposes of all of the rights or liabilities of one or more of the parties. In the matter at hand, the remaining count for fraudulent misrepresentation affects all of the defendants. None of the parties has been removed from the case. The issue here is whether the district court's order is a final judgment as to a single claim in a multi-claim action.

■ Rule 54(b) provides in pertinent part:

"When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

If such an order is properly entered, the certified judgment may be appealed to the Court of Appeals, subject, however, to scrutiny of the Rule 54(b) determination. In deciding whether to grant Rule 54(b) certification, the district court must address two distinct issues. First, whether "it is dealing with a 'final judgment' ... in the sense that it is 'an ultimate disposition of an individual claim entered in the course of multiple claims action.' " *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). If that hurdle is cleared, the district court must exercise its discretion to determine that the matter is "ready for appeal ... tak[ing] into account judicial administrative interests as well as the equities involved." *Id.* at 8, 100 S.Ct. at 1465.

■ Our standard of review depends on which stage of the district court's decision making is challenged. In considering a ruling on finality where, as here, the facts are not in dispute, our review is plenary. "The District Court *cannot,* in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of § 1291." *Sears Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (emphasis in original). "The district court is not empowered to enter judgment on a decision which is not final." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 440 (3d Cir.1977); *see also* 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2655 (2d ed. 1983) (review of "determination" that the matter is ready for appeal and "direction" of the entry of a "final" judgment should be separated and overlap between those two facets of a Rule 54(b) ruling kept to a minimum).

■ If the judgment is final, we review the district court's decision to certify for an abuse of discretion. We must "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Curtiss-Wright*, 446 U.S. at 10, 100 S.Ct. at 1466. Once those concerns have been met, "the discretionary judgment of the district court should be given substantial deference." *Id.*

■ The first question is whether the judgment entered was "final" for purposes of Rule 54(b). Finality is defined by the requirements of 28 U.S.C. § 1291, which are generally described as ending "the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911

(1945)). Rule 54(b) does not alter this definition, but allows a judgment to be entered if it has the requisite degree of finality as to an individual claim in a multiclaim action. The partial adjudication of a single claim is not appealable, despite a rule 54(b) certification. *Aetna Casualty & Surety Co. v. Giesow,* 412 F.2d 468, 470 (2d Cir. 1969). Consequently, it is necessary to consider what constitutes a "claim" within the meaning of Rule 54(b).

After extensive surveys of case law, leading commentators agree that uncertainty is the rule: "The line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure." 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2657, at 60–61 (2d ed. 1983); 6 J. Moore, W. Taggart & J. Wickers, *Moore's Federal Practice* ¶ 54.33[2], at 54–197 (1990) ("With the doctrine thus in ferment it is difficult to state any reliable litmus for identifying a distinct 'claim for relief.' "). Our Court has acknowledged the lack of consensus. In *Allegheny County Sanitary Auth. v. EPA,* 732 F.2d 1167, 1172 (3d Cir.1984), we observed that "[t]here is no definitive test to determine whether more than one claim is before the court." Similarly, *RePass v. Vreeland,* 357 F.2d 801, 805 (3d Cir.1966), noted the "difficulty of providing simple criteria to resolve this onerous problem."

A single definition of claim cannot resolve the variables presented by each case. We shall, therefore, follow the example of the Supreme Court noting that "[w]e need not here attempt any definitive resolution of the meaning of what constitutes a claim for relief within the meaning of the rules. It is sufficient to recognize that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 1206 n. 4, 47 L.Ed.2d 435 (1976).

■ Hesitant to slog through an exhaustive survey of opinions in search of an elusive decisive formula, we will mention but a few of the governing considerations discussed in case law. Alternative theories of recovery based on the same factual situation are but a single claim, not multiple ones. *Allegheny County Sanitary Auth.,* 732 F.2d at 1172. An order that eliminates two of several elements of damages flowing from a single claim does not qualify for Rule 54(b) certification. *Marino v. Nevitt,* 311 F.2d 406, 408 (3d Cir.1963).

■ Separate counts of a negligence complaint setting forth distinct theories of liability each of which contains the same two elements of damages state but a single claim. *RePass,* 357 F.2d at 804. An order subject to revision by the district court in subsequent proceedings before final judgment on all issues is not an ultimate disposition of an individual claim within Rule 54(b). *American Motorists Ins. Co. v. Levolor Lorentzen, Inc.,* 879 F.2d 1165, 1170–71 (3d Cir.1989).

One Court, apprehensive about settling on a single test, decided that the best approach was to "state rules of thumb to identify certain types of claims that clearly cannot be separate." *Local P–171, Amalgamated Meat Cutters & Butcher Workmen v. Thompson Farms Co.,* 642 F.2d 1065, 1070 (7th Cir.1981). The Court observed that "claims cannot be separate unless separate recovery is possible on each." Nor are they separate if they are "so closely related that they would fall afoul of the rule against splitting claims if brought separately." *Id.* at 1070–71. Picking up on that rule of thumb, the Court in *Tolson v. United States,* 732 F.2d 998, 1002 (D.C.Cir. 1984), stated, " '[d]ifferent facts' and 'distinguishable' law do not alone qualify an alleged claim for separate judgment under Rule 54(b); that Rule may not be invoked in opposition to 'the fundamental rule against splitting a [claim for relief].' "

Although the facts in a number of the opinions are somewhat similar to those present here, a case showing a notable resemblance is *Oyster v. Johns–Manville Corp.,* 568 F.Supp. 83 (E.D.Pa.1983), *appeal dismissed,* 770 F.2d 1066 (3d Cir. 1985). In that personal injury suit, the district court dismissed counts by the plaintiff against his employer based on negligence, breach of warranty, and strict liabil-

ity. A count sounding in intentional misconduct was left intact. The Court pointed out that the primary proof for recovery on the negligence counts and the remaining count was the manufacture of a product that harmed the plaintiff. The remaining count required a showing of an additional element—intent, that is, knowledge of the product's harmful effect and failure to warn the plaintiff.

Recognizing that establishing intent would require proof of additional facts, the court continued:

"However, the core of operative facts surrounding plaintiff's proofs on the intentional tort counts is the same as that which exists with regard to the dismissed counts.

... [T]he degree of consanguinity between the dismissed portion of the complaint and the remainder thereof is so close as to compel the conclusion that plaintiff has, within the meaning of Rule 54(b), presented only one 'claim'...."

Id. at 86. We agree with that district court analysis.

Resolution of the issue presented here requires further examination of the facts. As stated earlier, plaintiff alleges that it suffered various losses as a result of the purchase of the drugs.

In Counts 1–3, asserting breach of warranties and contract, the complaint asked for "damages, interest, costs of suit, and such other relief as is appropriate under the Uniform Commercial Code ... or as is deemed just and equitable by the Court." In the fourth count, asserting a hold harmless agreement, plaintiff additionally requested "expenses of defense" and "attorney's fees." Neither were awarded by the district court.

The Court did not enter judgment on count five, which alleged that the two corporate defendants sold the veterinary drugs to the plaintiff in violation of a consent decree requiring certain modifications in their manufacturing process. According to the complaint, as a result of the failure to implement the consent decree, the drugs became adulterated and the defendants falsely represented that the drugs were merchantable. Asserting that the defendants acted in "intentional and/or reckless disregard of the truth," plaintiff requested "damages, interest, costs of suit, punitive damages, and such other relief as appropriate under the Uniform Commercial Code."

The thrust of count five is, at its base, the same as the other four counts and relies on the same crucial facts—the sale of adulterated and hence unmerchantable drugs to the plaintiff. For all practical purposes, the only difference between counts 1–4, and five is that in the latter plaintiff seeks punitive damages. The only additional evidence that would be required for proof of count five is intent to misrepresent.

■ When liability rests on the same transaction or series of transactions, a count for punitive damages, although of a different order than compensatory damages, does not constitute a separate claim under Rule 54(b). Rather, this is simply an example of an attempt to split a cause of action.

The parties have cited the law of New Jersey, where the drugs were delivered, in discussing the legal issues on the merits and, accordingly, appear to adopt it as applicable in this diversity case. Recognizing that the issue discussed here is one of federal procedure and hence state law is not controlling, we nevertheless find that state's "entire controversy doctrine" helpful. It precludes splitting a cause of action and "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Cogdell v. Hospital Center at Orange*, 116 N.J. 7, 560 A.2d 1169, 1172 (1989). Here, all of the plaintiff's allegations arise out of a single transaction. Count five of the complaint could not have been brought in a separate action.

Accordingly, we find that the judgment entered against the corporate defendants is not final under Rule 54(b) because the

plaintiff's counts are not separate claims. Consequently, the district court erred in directing the entry of its judgment as final.

## II.

▮ Although we have chosen to reverse because of the lack of a final order, we also reverse on an alternate ground—that the Rule 54(b) certification was inconsistent with the appropriate exercise of sound discretion.

The district court's discretion in this area is not unbounded. In *Curtiss-Wright* the Supreme Court listed "judicial administrative interests" as a factor that must be considered by the district court in determining whether the matter is ready for appeal. 446 U.S. at 8, 100 S.Ct. at 1465.

The possibility exists here that the need to review the issues currently appealed may be mooted by future developments in the district court. Under count five plaintiff sought the same compensatory damages already awarded under counts 1–4. The entire recovery plaintiff originally sought could have been awarded under count five if the plaintiff had prevailed on that count. Although the allegations of fraud in count five arose from the same core of facts as the counts in this appeal, the use of that alternate theory of liability could moot the need to review the issue preclusion question currently appealed.

The interlocking factual relationship of the various counts leading to the likelihood that a subsequent appeal would again seek review of the issues presented here also suggests that it was not in the interests of sound judicial administration for the district court to certify this judgment as final. *See Spiegel v. Trustees of Tufts College,* 843 F.2d 38 (1st Cir.1988); *Hayden v. Mc-Donald,* 719 F.2d 266 (8th Cir.1983); *Morrison–Knudsen Co. v. Archer,* 655 F.2d 962 (9th Cir.1981); *Allis–Chalmers Corp. v. Phila. Elec. Co.,* 521 F.2d 360 (3d Cir. 1975).

Moreover, chopping off count five was an inappropriate splintering of a judicial unit. This may most clearly be seen by assuming that this case had been set for jury trial. It is difficult to believe that the court would not have ordered all of the counts to be resolved in one trial. Otherwise, the evidence establishing liability and losses under counts 1–4 previously submitted to the first jury, would also have to be heard by the second jury in order to arrive at an appropriate verdict on count five.

Failure to consider the administrative interests involved could result in a substantial waste of judicial resources. In *Minority Police Officers Ass'n. of South Bend v. City of South Bend,* 721 F.2d 197, 200–01 (7th Cir.1983), the Court of Appeals suggested that there should be a presumption against characterizing a pleading as containing multiple claims rather than one claim in the 54(b) context. Citing exceptional increases in the appellate caseload, the Court observed that liberal construction of Rule 54(b) has a potential for causing still more rapid increases. *Id.*

The Federal Courts Study Committee Report revealed that the federal appellate caseload has increased ten-fold over the past thirty years. "However people may view other aspects of the federal judiciary, few deny that its appellate courts are in a 'crises of volume' that has transformed them from the institution they were even a generation ago." *Report of the Federal Courts Study Committee* 109 (1990).

Acknowledging that concern, one respected commentator noted that "courts of appeals, under the weight of very heavy dockets, are increasingly resistent to piecemeal appeal." Further, "despite the jurisdictional cast of the decisions, their content is increasingly directed to practical considerations of judicial administration." 6 J. Moore, W. Taggart & J. Wickers, *Moore's Federal Practice* ¶ 54.33[2], at 54–197 (1990).

Therefore, we conclude that the order certifying the partial summary judgment under 54(b) must be reversed. The case will be remanded to the district court for further proceedings.