19 F.3d 1443
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Loretta LIVESAY, Plaintiff-Appellant,
v.
Ray SHOLLENBARGER and Fred Nevarez, Defendants-Appellees.
 No. 92-2182.
 United States Court of Appeals, Tenth Circuit.
 Feb. 18, 1994.
 
 1
 Before BALDOCK and McWILLIAMS, Circuit Judges, and SAFFELS,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 SAFFELS, Senior District Judge.
 
 
 4
 Plaintiff Loretta Livesay brought this suit pursuant to 42 U.S.C. Sec. 1983 against officials of the State of New Mexico who were formerly her employers, contending that their decision to terminate her state employment was unlawfully motivated by her gender and in retaliation for her exercise of the right of free speech.[1] She also claimed that defendant Ray Shollenbarger, the head of the state agency with which she was employed, was liable to her for sexual harassment perpetrated against her by her co-workers. Defendant Fred Nevarez, plaintiff's immediate supervisor, allegedly participated in the decision to terminate her employment.[2]
 
 
 5
 On a special verdict, the jury found in favor of the plaintiff and against the defendants on all three claims. The jury awarded the plaintiff a total of $1,500,000 in damages, of which $900,000 was for emotional injury, $200,000 was for financial loss, and $400,000 was for punitive damages. Of the total, $500,000 was awarded against defendant Shollenbarger to compensate plaintiff for emotional injury on the sexual harassment claim. The remaining $1,000,000 was allocated equally between the two defendants and between the two distinct legal theories underlying her claim against them for unlawful termination.
 
 
 6
 The defendants jointly filed a motion pursuant to Fed.R.Civ.P. 50 for judgment notwithstanding the verdict, for new trial, or in the alternative for remittitur. The district court granted judgment n.o.v. in favor of defendant Nevarez on both claims of unlawful discharge, concluding that there was no evidence to support even an inference that Nevarez was involved in the decision to terminate the plaintiff. The district court denied judgment n.o.v. to defendant Shollenbarger as to his liability, concluding that there was sufficient evidence to support the jury's verdicts against him for sexual harassment and for unlawfully terminating plaintiff. However, the court granted judgment n.o.v. in favor of Shollenbarger with regard to the award of punitive damages against him, specifically finding that there was no evidence to support a punitive damages award because Shollenbarger's decision to terminate plaintiff was based on the advice of counsel.
 
 
 7
 The trial court also granted defendant Shollenbarger's alternative motion for a new trial as to both liability and damages, concluding that the amount of damages awarded by the jury for emotional injury shocked the court's conscience and indicated that the jury was influenced by passion, prejudice, or bias.[3] The trial court later entered an order conditionally granting a new trial on the claims against Nevarez and on the plaintiff's claims for punitive damages, in the event this court reverses the judgments n.o.v.
 
 
 8
 On the joint request of the parties, the trial court entered orders pursuant to Fed.R.Civ.P. 54(b) directing entry of judgment in favor of defendant Nevarez on all claims and in favor of defendant Shollenbarger with respect to punitive damages. The plaintiff appeals the orders granting judgment n.o.v. to the defendants. She does not challenge the trial court's interlocutory decision to grant a new trial on all three of her claims against defendant Shollenbarger.
 
 Jurisdiction
 
 9
 This court sua sponte directed the parties to file briefs on the question of whether the appellate court has jurisdiction to consider this appeal, since the decisions of the trial court from which the appeal is taken did not terminate the litigation.
 
 
 10
 In separate orders, the district court certified the finality of the judgment n.o.v. entered in favor of Nevarez and the judgment n.o.v. in favor of Shollenbarger on the issue of punitive damages. See Fed.R.Civ.P. 54(b). Under Rule 54, in a case involving multiple parties or multiple claims, as a general rule an order adjudicating fewer than all the claims or the rights and liabilities of all the parties does not terminate the action as to any of the claims or parties for purposes of appeal. However, the rule permits the court to direct entry of judgment as to one or more but fewer than all of the claims or parties, upon an express determination that there is no just reason for delay and upon express direction for entry of judgment. However, a certification under Rule 54(b) as to one or more but fewer than all claims is not to be made routinely or as an accommodation to counsel. Great American Trading Corp. v. I.C.P. Cocoa, Inc., 629 F.2d 1282, 1286 (7th Cir.1980); Page v. Preisser, 585 F.2d 336, 339 (8th Cir.1978); Panichella v. Pennsylvania R.R. Co., 252 F.2d 452, 455 (3d Cir.1958).
 
 
 11
 Two distinct issues must be addressed by the trial court in deciding whether to grant Rule 54(b) certification. First, the court must decide whether it is dealing with an ultimate disposition of an individual claim entered in the course of a multiple-claim action, or the disposition of the rights and liabilities of at least one party in the course of a multiple-party action.[4] If that threshold question is answered in the affirmative, the court next exercises its discretion in determining whether the matter is ready for appeal, taking into account judicial administrative interests and the equities involved. See Sussex Drug Products v. Kanasco, Ltd., 920 F.2d 1150, 1153 (3d Cir.1990) (quoting Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7-8 (1980)).
 
 
 12
 Nevertheless, the trial court's certification under Rule 54(b) is not conclusive as to the finality of the trial court's order for purposes of appellate jurisdiction. See McKinney v. Gannett Co., Inc., 694 F.2d 1240, 1247 (10th Cir.1982) (jurisdictional defect cannot be cured by Rule 54(b) certification) (citation omitted); see also Sussex Drug Products, 920 F.2d at 1153 (partial adjudication of single claim not appealable despite Rule 54(b) certification). If the order from which the appeal is taken is in fact interlocutory and does not adjudicate one or more but less than all claims in the action or the rights and liabilities of one or more parties, Rule 54(b) does not permit an immediate appeal notwithstanding the trial court's decision to treat the order as final. Buckley v. Fitzsimmons, 919 F.2d 1230, 1237 (7th Cir.1990), modified on other grounds, 952 F.2d 965 (7th Cir.1992), reversed on other grounds, 113 S.Ct. 2606 (1993); see 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure: Civil 2d Sec. 2655, at 41 (1982); see also United States v. Burnett, 262 F.2d 55, 59 (9th Cir.1958) (court's language calling a judgment final is not determinative if its own import was to dispose of only a portion of the damages issues presented by a single claim). Our review of the trial court's finality determination is plenary. Sussex Drug Products, 920 F.2d at 1153.[5]
 
 
 13
 Without question, the trial court properly certified under Rule 54(b) the judgment n.o.v. entered in favor of defendant Nevarez, since it finally determined all of the plaintiff's claims against Nevarez as a party to this action. However, the entry of judgment n.o.v. in favor of defendant Shollenbarger on the issue of punitive damages, in conjunction with an order granting him a new trial on the issues of liability and compensatory damages, did not render a final determination on any claim pending against him.
 
 
 14
 In order to meet the requirements of Rule 54(b), the matter disposed of by the order must constitute a separate claim for relief. School Dist. No. 5 v. Lundgren, 259 F.2d 101, 104 (9th Cir.1958). The term "claim," within the meaning of the rule, means a cause of action. Id. (citing Sears, Roebuck and Co. v. Mackey, 351 U.S. 427, 437 (1956)). A "claim" includes all factually or legally connected elements of a case. Buckley v. Fitzsimmons, 919 F.2d at 1237. But cf. Samaad v. City of Dallas, 940 F.2d 925, 930-32 (5th Cir.1991) (exact definition of "claim for relief" for purposes of Rule 54(b) is an unsettled question).
 
 
 15
 The punitive damages sought by the plaintiff against Shollenbarger do not constitute a separate claim against him. See Mason v. Texaco, Inc., 948 F.2d 1546, 1554 (10th Cir.1991) (punitive damage claim is not independent cause of action separate from balance of plaintiff's case, but is part and parcel of a liability determination), cert. denied, 112 S.Ct. 1941 (1992); Sussex Drug Products, 920 F.2d at 1155 (count seeking punitive damages, based upon same transaction or set of transactions, is not a separate claim); see also Arizona State Carpenters Pension Trust Fund v. Miller, 938 F.2d 1038, 1040 (9th Cir.1991) (quoting Sussex Drug Products with approval). Although the jury was required to make additional findings in order to support the award of punitive damages, that award could not stand independent of the jury's determination on the issue of Shollenbarger's liability to the plaintiff for her termination. See Sears, Roebuck and Co. v. Mackey, 351 U.S. at 436 (to be separate claims for relief within meaning of Rule 54(b), claims must not be inherently inseparable and must be capable of being decided independently); Local P-171, Amalgamated Meat Cutters and Butcher Workmen v. Thompson Farms Co., 642 F.2d 1065, 1070-71 (7th Cir.1981) (claims not separate unless, at minimum, separate recovery is possible on each).
 
 
 16
 We do not address whether the trial court was acting within the bounds of its authority in granting judgment n.o.v. on the issue of punitive damages.[6] Indeed, if the defendant properly preserves the issue, an award of punitive damages must be set aside if the court determines that the issue should not have been submitted to the jury. See Jackson v. Pool Mortgage Co., 868 F.2d 1178, 1182 (10th Cir.1989); Lavicky v. Burnett, 758 F.2d 468, 477 (10th Cir.1985), cert. denied sub nom. Moore v. Lavicky, 474 U.S. 1101 (1986). However, certification of the issue as a final judgment for purposes of appeal was not within the authority conveyed by Rule 54(b), which cannot apply unless the order appealed resolves a claim in its entirety, or the rights and obligations of a party in their entirety. To hold otherwise would be inconsistent with the longstanding policy of the federal courts disfavoring piecemeal appeals. See, e.g., Curtiss-Wright Corp. v. General Electric Co., 446 U.S. at 10; Sussex Drug Products, 920 F.2d at 1154; see also Trinity Broadcasting Corp. v. Eller, 827 F.2d 673, 675 (10th Cir.1987) (Rule 54(b) seeks to prevent piecemeal review), cert. denied sub nom. Morrel v. Trinity Broadcasting Corp., 487 U.S. 1223 (1988).
 
 
 17
 This court therefore lacks jurisdiction to review the trial court's judgment n.o.v. in favor of defendant Shollenbarger on the issue of his liability to the plaintiff for punitive damages. Accordingly, to the extent we are asked to decide whether defendant Shollenbarger was properly granted judgment n.o.v. on the question of his liability for punitive damages, we dismiss plaintiff's appeal for lack of an appealable order.[7]
 
 
 18
 Judgment N.O.V. in Favor of Defendant Nevarez
 
 
 19
 We turn now to the remaining issue raised in this appeal. The plaintiff contends that the trial court erred in granting judgment n.o.v. in favor of defendant Nevarez on her claims against him for wrongful termination.
 
 
 20
 This court reviews a decision to grant a motion for judgment notwithstanding the verdict de novo, applying the same standard as the trial court. Meyers v. Ideal Basic Indus., Inc., 940 F.2d 1379, 1383 (10th Cir.1991), cert. denied, 112 S.Ct. 935 (1992); Johnsen v. Indep. School Dist. No. 3, 891 F.2d 1485, 1489 (10th Cir.1989). Judgment n.o.v. should be cautiously and sparingly granted. Lucas v. Dover Corp., Norris Div., 857 F.2d 1397, 1400 (10th Cir.1988) (citation omitted). "Jury verdicts are not to be lightly overturned," because "a 'traditional sanctity' attaches to the solemn verdict of a jury." Paz v. Carman Indus., 860 F.2d 977, 979 (10th Cir.1988) (quoting Midwest Underground Storage, Inc. v. Porter, 717 F.2d 493, 501 (10th Cir.1983)).
 
 
 21
 The appropriate inquiry is whether there is evidence upon which a jury could properly find a verdict for the party against whom the motion is directed. Meyers, 940 F.2d at 1383. The evidence, and all inferences to be drawn from the evidence, must be viewed in a light most favorable to the party opposing the motion. Meyers, 940 F.2d at 1383; Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir.1990); Johnsen, 891 F.2d at 1489. The court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. Lucas v. Dover Corp., 857 F.2d at 1400. Testimony unfavorable to the nonmoving party must be disregarded. Bailey v. Slentz, 189 F.2d 406, 408 (10th Cir.1951).
 
 
 22
 In order to grant judgment n.o.v., the evidence and inferences, when construed in the light most favorable to the party opposing the motion, must be so clear that reasonable minds could not differ as to the result. Johnsen, 891 F.2d at 1489. Stated another way, a judgment n.o.v. may not be granted unless the evidence points but one way, and is susceptible to no reasonable inferences that may sustain the position of the party opposing the motion. Abercrombie, 896 F.2d at 1231; Lucas, 857 F.2d at 1400. However, in order to avoid a motion for judgment n.o.v., more than a mere scintilla of evidence must support the nonmoving party's case. Meyers, 940 F.2d at 1383. Further, the consideration of such a motion is framed by the underlying evidentiary standards applicable at the trial on the merits. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). In this case, the plaintiff was required to prove by a preponderance of the evidence her claims that she was discharged on the basis of her gender and in retaliation for the exercise of her First Amendment rights.
 
 
 23
 In granting judgment n.o.v. in favor of defendant Nevarez, the trial court reasoned that there was no substantial evidence to support a finding that he was involved in the decision to terminate plaintiff from her employment.[8] Since both claims submitted to the jury against Nevarez were based upon wrongful termination, the trial court reasoned that neither verdict could stand against him. We are therefore required to scrutinize the trial record for all evidence and inferences therefrom that might support a finding that Nevarez was involved in the decision to terminate the plaintiff.[9] We are not to weigh the evidence, but rather decide whether there was more than a scintilla of evidence, and inferences from the evidence, on which a reasonable jury could properly base a conclusion that Nevarez participated in the decision to terminate plaintiff. We conclude that there was sufficient evidence to support the jury's finding that Nevarez was involved in the decision to terminate the plaintiff's employment, and the trial court therefore erred in granting judgment n.o.v. in his favor.
 
 
 24
 It was undisputed that defendant Nevarez was plaintiff's immediate supervisor, to whom she submitted monthly written reports of her daily work activities. Nevarez admitted that he was responsible for evaluating the plaintiff. Further, evidence was presented at trial from which the jury could have concluded that Nevarez was involved in the decision to hire plaintiff, initially in a temporary position to replace an individual who had been unable to work due to a back injury. Defendant Nevarez signed the personnel form requesting the hiring of plaintiff for the temporary position. Later, defendant Nevarez reassigned the plaintiff to take the permanent position of a co-worker who had resigned.
 
 
 25
 From the evidence that Nevarez participated in the decision to hire the plaintiff, and the evidence that she reported to him as her immediate supervisor, the jury could properly infer that Nevarez was a participant in the decision to terminate her. The jury could properly draw from its common knowledge that a decision to terminate an employee is generally not made without consulting with the employee's immediate supervisor, especially one who was involved in the decision to hire her. We think that this evidence alone, when viewed in the light most favorable to the plaintiff as the nonmoving party, supports the jury's implicit finding that defendant Nevarez was indeed a participant in the decision to terminate her.
 
 
 26
 However, there was more evidence from which the jury could have inferred that defendant Nevarez participated in the decision to fire plaintiff. Defendant Shollenbarger testified that he made the decision to terminate the plaintiff, on the recommendation of Mary Ann Hughes, the agency's attorney. Shollenbarger had supervisory responsibility for about 400 positions in the state Regulation and Licensing Department, of which nearly 90 were assigned to the Construction Industries Division, where plaintiff was employed as a building inspector. It was undisputed that the only time plaintiff ever saw Shollenbarger was at a meeting he convened with division employees in the Albuquerque office to air grievances concerning salary levels. Shollenbarger repeatedly testified that because he was the head of the agency, he relied upon information, statements, and recommendations from his staff in making decisions. However, he was unable to identify the specific individuals upon whom he relied in deciding to terminate plaintiff, except Mary Ann Hughes and Jack Wirtz, the director of the Construction Industries Division. Defendant Nevarez, the head of the General Construction Bureau, was in the direct line of command between Shollenbarger and the plaintiff. The only other individual in that line of command was Jack Wirtz, who had resigned one working day prior to plaintiff's termination after he refused Shollenbarger's request to terminate plaintiff.
 
 
 27
 It was undisputed that on the afternoon of the same day Wirtz resigned, a Friday, Nevarez telephoned the plaintiff and directed her to attend a meeting in defendant Shollenbarger's office early Monday morning. At that meeting, Mary Ann Hughes, the agency's attorney, notified plaintiff that she was being terminated. There was plenty of evidence at trial from which the jury could have concluded that Nevarez had reason to want plaintiff terminated. Further, Mary Ann Hughes, who recommended plaintiff's termination to Shollenbarger, testified that Nevarez had submitted complaints to her regarding the plaintiff. From this evidence the jury could have properly concluded that Nevarez knew the purpose of the termination meeting and had provided input in favor of the decision, thereby bolstering the common-sense inference that he participated in the decision to discharge plaintiff.
 
 
 28
 The fact that both defendants and Mary Ann Hughes denied that Nevarez was aware of the purpose of the meeting is irrelevant to our analysis, since we must view the evidence, and the inferences from the evidence, in the light most favorable to the plaintiff as the nonmoving party. Inferences from circumstantial evidence may amount to full proof of a given theory, and may on occasion be strong enough to overcome the effect of direct testimony to the contrary. Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1164 (10th Cir.1977) (citing The Wenona, 86 U.S. 41, 58 (1873)). This case presents just such an occasion. The jury had the option of disbelieving the testimony of the defendants and instead relying upon inferences from the evidence in support of its conclusion that Nevarez was a participant in plaintiff's firing. The trial court in this case reached its decision to grant judgment n.o.v. by weighing the evidence, rather than construing it in the light most favorable to the plaintiff.
 
 
 29
 Although we believe the evidence was sufficient to support the jury's verdict, a procedural reason also exists for reversing the entry of judgment n.o.v. While defendant Nevarez made an oral motion for directed verdict at the close of the plaintiff's evidence, relying in part on the issue of the sufficiency of the evidence that he was involved in the termination decision, he failed to renew his motion for directed verdict at the close of all the evidence as required by Fed.R.Civ.P. 50(b). Defendant Nevarez therefore failed to preserve the issue for purposes of obtaining judgment n.o.v. on that basis. See Rule 50(b) advisory committee's note (1963 amendment).
 
 
 30
 Accordingly, we DISMISS the appeal from the decision granting judgment n.o.v. in favor of defendant Shollenbarger on the issue of punitive damages. We REVERSE the decision of the trial court entering judgment in favor of defendant Nevarez notwithstanding the verdict, and REMAND for further proceedings consistent with this order and judgment.[10]
 
 
 
 *
 The Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The defendants were sued only in their individual capacities
 
 
 [2]
 Although plaintiff originally claimed that defendant Nevarez participated in the sexual harassment by her co-workers, the jury was not asked to decide whether Nevarez was liable to the plaintiff for sexual harassment, or whether he was liable as a supervisor for the acts of her co-workers. At trial, the plaintiff lodged no objections to either the jury instructions proposed by the trial court or to the verdict form
 
 
 [3]
 By stipulation of the parties, Shollenbarger's new trial has been deferred pending the outcome of this appeal
 
 
 [4]
 The fact that the trial court conditionally granted a new trial to Nevarez, and conditionally granted a new trial to both defendants with regard to their liability for punitive damages, does not affect the finality of the judgments n.o.v. See Fed.R.Civ.P. 50(c)(1). Nevertheless, the trial court was required to decide whether the challenged decisions otherwise disposed of at least a single claim or at least a single party to this action
 
 
 [5]
 Only if we agree that the judgment is "final" may we review the certification decision to determine whether it was an abuse of discretion. See Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. at 7-8, 10. In this instance, neither party to this appeal challenges the trial court's decision to certify the judgments n.o.v. under Rule 54(b). In fact, both parties jointly sought certification
 
 
 [6]
 Under Fed.R.Civ.P. 50, the entry of judgment as a matter of law, also known as judgment n.o.v., is appropriate during a trial if a party has been fully heard with respect to an issue and there is no legally sufficient basis under the evidence for a reasonable jury to have found for that party with respect to that issue. In this case, however, the trial court entered judgment n.o.v. on the post-trial motion of the defendants, even though the defendants did not assert the punitive damages issue either in their motion for directed verdict made at the close of the plaintiff's case, or in a renewed motion at the close of all the evidence. The issue arose at trial only because it was raised sua sponte by the court at the close of the evidence, prior to finalizing the court's proposed jury instructions. Post-trial entry of judgment n.o.v. is permitted by Rule 50(b) only if preceded by a motion for directed verdict made at the close of all the evidence. Fed.R.Civ.P. 50(b) advisory committee note (1963 amendment)
 
 
 [7]
 We recognize that the trial court's order granting Shollenbarger a new trial on the issues of liability and compensatory damages is interlocutory, and is therefore not before us for review. Upon remand, however, the trial court's attention is directed to Mason v. Texaco, Inc., 948 F.2d at 1554, in which this court held that when a new trial is ordered on the issue of liability, the question of punitive damages is part and parcel of the liability determination and is therefore subject to retrial. Consequently, if the trial court conducts a new trial on the claims against defendant Shollenbarger, the issue of his liability for punitive damages must be retried as well
 
 
 [8]
 The pertinent section of the trial court's order granting judgment n.o.v. to defendant Nevarez reads as follows:
 [E]ven if there were sufficient evidence to show that Nevarez was involved in the decision to hire plaintiff, there was no substantial evidence that he was involved in the decision to fire her. The only evidence upon which plaintiff relies is Nevarez' testimony that the Division's attorney, Mary Ann Hughes, asked Nevarez to have plaintiff report to a meeting [at which she was notified of her termination]. Nevarez did inform plaintiff that she had to meet with Mary Ann Hughes in Santa Fe on March 5, 1990. At this meeting, Mary Ann Hughes informed plaintiff that she was terminated. Hughes testified that the only reason she gave plaintiff was that her employment was not "working out." Even if Nevarez knew the purpose of the meeting, which he, Hughes and Shollenbarger testified he did not, this is insufficient to support an inference that Nevarez had any part in the actual decision to terminate plaintiff. Both Shollenbarger and Hughes testified that they were the only two involved in the decision to fire plaintiff. Because all the evidence points one way, in the direction that Nevarez did not participate in the decision to fire plaintiff, a judgment n.o.v. in favor of Nevarez is appropriate on both the sex discrimination and the First Amendment claims.
 
 
 [9]
 We note that the trial court did not grant judgment n.o.v. in favor of defendant Nevarez on the basis that there was insufficient evidence that his actions were improperly motivated. The jury's verdict in favor of the plaintiff on both claims against Nevarez implies that the jury determined that he was indeed motivated by both gender discrimination and an intent to retaliate against her for the exercise of her First Amendment rights. See Ware v. Unified School District No. 492, Butler Co., State of Kan., 881 F.2d 906, 911 (10th Cir.1989) (evidence on motivating factor issue may be sufficient to support jury verdict even though circumstantial), modified on other grounds, 902 F.2d 815 (10th Cir.1990). The only reason cited by the trial court in support of its decision setting aside the judgments against Nevarez was that there was insufficient evidence that he was personally involved in the termination decision. We therefore need not address the plaintiff's lengthy recitation of the evidence reflecting on Nevarez' motives
 Similarly, the plaintiff misses the mark in relying upon Professional Ass'n of College Educators, TSTA/NEA v. El Paso County Comm. College Dist., 730 F.2d 258 (5th Cir.), cert. denied, 469 U.S. 881 (1984). A careful reading of that opinion reveals that the issue before the court was whether the defendant, who merely recommended plaintiff's termination, could be held liable for terminating plaintiff in retaliation for the exercise of his First Amendment rights, even though the governing board that actually fired plaintiff did not do so on the basis of an improper motive. In contrast, in this case the issue is whether defendant Nevarez was a participant in the decision to discharge the plaintiff. The jury's determination that both defendants acted on the basis of improper motives is not before this court for review.
 
 
 [10]
 We note that the plaintiff does not appeal the decision of the trial court conditionally granting a new trial to defendant Nevarez in the event of reversal of judgment n.o.v. in his favor. Consequently, we do not have that decision before us for appellate review. See Fed.R.Civ.P. 50(c)(1) advisory committee's note (1963 amendment). We therefore do not address that aspect of the trial court's decision, and we decline to direct reinstatement of the jury's verdict against defendant Nevarez